In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Kathryn P. KARLSSON, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant,†

v.

Kathryn P. KARLSSON, Respondent.

Supreme Court

*No. 00–2043–D. Filed November 29, 2001.*

2001 WI 126

(Also reported in 635 N.W.2d 771.)

† Motion for reconsideration denied but original opinion modified on 3-15-02.

¶ 1. PER CURIAM. We review the recommendation of the referee that Attorney Kathryn P. Karlsson's license to practice law in Wisconsin be suspended for nine months based on separate counts of misconduct involving seven clients demonstrating a consistent pattern of neglect over many years; the 19 misconduct counts also included several counts of Attorney Karlsson's failure to cooperate with the Board of Attorneys Professional Responsibility's[1] investigation into her misconduct. Furthermore, the referee concluded that Attorney Karlsson's misconduct reflected a significant long-term problem that predated her depression and her unresolved medical problems which the referee in any event concluded were not causative of the misconduct. In addition to recommending a nine-month license suspension, the referee also recommended certain conditions be imposed for reinstatement including that Attorney Karlsson pay the costs of the disciplinary proceeding totaling $17,923.83.

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation ("OLR") and the supreme court rules applicable to the lawyer regulation system were also revised in part. Because the misconduct underlying this case arose prior to October 1, 2000, the investigative body will be referred to as "the Board" and all references to supreme court rules will be to those in effect prior to October 1, 2000, unless otherwise noted.

¶ 2. We determine that the seriousness of Attorney Karlsson's professional misconduct warrants a suspension of her license to practice law in this state for nine months. We also adopt the referee's recommendation and impose specific conditions for reinstatement of her license.

¶ 3. Attorney Karlsson was admitted to practice law in Wisconsin in 1990 and has practiced in Milwaukee since that time. She has not previously been the subject of an attorney disciplinary proceeding.

¶ 4. The Board of Attorneys Professional Responsibility filed a complaint in this court alleging that Attorney Karlsson had committed twelve counts of professional misconduct involving seven of her clients; in addition, the complaint charged Attorney Karlsson with seven separate counts of non-cooperation with the Board in its disciplinary investigation.

¶ 5. After Attorney Karlsson filed an answer, the matter was sent to a referee for a hearing pursuant to the new provisions in SCR 22.13(3).[2] After three days of public hearings in this matter, referee Stanley Hack filed his report concluding that the Board had established all counts of alleged misconduct and non-cooperation by Attorney Karlsson. Neither Attorney Karlsson nor the Board has filed an appeal in this matter.

¶ 6. We summarize the referee's findings and conclusions with respect to the 19 separate counts of misconduct alleged against Attorney Karlsson.

[2] SCR 22.13(3) (effective October 1, 2000) provides in pertinent part:

> (3) ... upon receipt of proof of service of the complaint, the clerk of the supreme court shall select a referee from the panel provided in SCR 21.08, ... and the chief justice shall appoint the referee to conduct a hearing on the complaint.

## COUNTS ONE, TWO, AND THREE

¶ 7. The Board alleged, and the referee so found, that Attorney Karlsson had failed to act with reasonable diligence and promptness in representing her client, T.S., who had retained Attorney Karlsson to represent her in a divorce action. The referee's report detailed T.S.'s numerous attempts to contact Attorney Karlsson during the period of this representation. The referee also made findings regarding Attorney Karlsson's failure to file a written response to T.S.'s grievances as requested by the Board's investigative staff.

¶ 8. The referee concluded that Attorney Karlsson's failure to act with reasonable diligence and promptness in representing T.S. was a violation of SCR 20:1.3.[3] In addition, the referee concluded that Attorney Karlsson's failure to promptly comply with T.S.'s reasonable requests for information and Attorney Karlsson's failure to keep T.S. reasonably informed about the status of the divorce action, constituted a violation of SCR 20:1.4(a).[4] Likewise, the referee concluded that by failing to respond to several letters from Board staff and failing to appear for an investigative interview, Attorney Karlsson had failed to cooperate in the Board's investigation in violation of SCR 21.03(4) and SCR 22.07.[5]

---

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] Former SCR 21.03(4) provided that "[e]very attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator."

## COUNTS FOUR AND FIVE

¶ 9. The Board's complaint alleged, and the referee found, that in the spring of 1997 Attorney Karlsson

Former SCR 22.07 provided: Investigation

(1) The administrator shall investigate any matter under the board's jurisdiction.

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

(4) The duty of the respondent to cooperate with the board's investigation does not affect the respondent's privilege against self-incrimination, but the privilege may be claimed only in respect to matters which may subject the respondent to criminal liability.

(5) A committee shall report to the administrator the result of each investigation assigned to it and may make a recommendation for disposition of the matter. The administrator shall report the result of each investigation to the board and make a recommendation for disposition of the matter. If the administrator does not recommend dismissal of the grievance, the administrator shall first prepare an investigative report and provide a copy to the grievant and to the respondent. The grievant and the respondent may submit a written response to the report no later than 10 days following receipt of the report. The administrator shall then report the result of the investigation to the board, including any response submitted by the grievant or the respondant.

was retained by E.G. to represent her in a custody and visitation dispute. Attorney Karlsson agreed that E.G. could make installment payments toward the retainer fee and that if E.G. chose ultimately not to file suit, the payments would be returned. E.G. thereafter made at least three $50 payments to Attorney Karlsson for the prepayment of legal fees and in addition, E.G.'s mother, C.L. also made four payments to Attorney Karlsson on behalf of E.G.

¶ 10. The referee determined that Attorney Karlsson performed no services for E.G. and that in fact, E.G. appeared pro se at a subsequent hearing where she was able to resolve the custody issue herself. In addition, the referee determined that Attorney Karlsson had not responded to E.G.'s and her mother's letters requesting refunds of the retainer payments. Also, according to the referee, Attorney Karlsson had failed to respond to the Board's investigative staff's letters concerning the E.G. and C.L. grievances and she failed to appear for an investigative interview concerning those matters. When Attorney Karlsson later appeared at a rescheduled interview, the Board staff requested that she provide a written response to the specific allegations of the grievances but, despite follow-up requests, Attorney Karlsson never filed a written response to the E.G. and C.L. grievances. In addition, the referee determined that although Attorney Karlsson had returned some of the money, she had failed to return $100 to E.G.

¶ 11. Based on these findings, the referee concluded that by failing to promptly return unearned retainer fees paid by or for E.G., Attorney Karlsson had violated SCR 20:1.16(d).[6] Similarly, the referee deter-

---

[6] SCR 20:1.16(d) provides:

mined that by failing to respond to three letters from the Board's investigative staff and failing to appear for the scheduled investigative interview, Attorney Karlsson had failed to cooperate with the investigation of the E.G. and C.L. grievances in violation of SCR 21:03(4) and SCR 22.07.

## COUNTS SIX AND SEVEN

¶ 12. The Board's complaint alleged, and the referee found, that Attorney Karlsson had been retained by P.M. to represent her in a post-judgment divorce matter in May of 1997 and that P.M. paid Attorney Karlsson a $1500 fee advance. The referee further determined that after P.M. provided certain material to Attorney Karlsson at her office, Attorney Karlsson had no further contact with P.M. for the next year.

¶ 13. In addition, although P.M. subsequently sent Attorney Karlsson three letters between June and September of 1998 requesting the return of her divorce file and a return of a portion of the advance fee, Attorney Karlsson did not reply.

¶ 14. In April of 1999 P.M. obtained a $1500 small claims judgment against Attorney Karlsson; however, according to the referee's findings, Attorney Karlsson did not pay that judgment until March 2000, after the Board's investigator had contacted Attorney Karlsson about this grievance.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

¶ 15. In addition, the referee determined that Attorney Karlsson failed to respond to the Board's initial letter requesting a response to the P.M. grievance and that Attorney Karlsson then failed to respond to a subsequent certified letter again asking for a response. Similarly, Attorney Karlsson failed to appear at the scheduled investigative interview. When she later appeared for a rescheduled interview, the Board staff requested that she provide a response to the specific allegations of the P.M. grievance within 30 days; however, despite follow-up requests, Attorney Karlsson never supplied a written response to the P.M. grievance.

¶ 16. The referee concluded that by failing to promptly return P.M.'s file upon request, failing to refund P.M.'s retainer until almost a year after P.M. had obtained the judgment against her, and failing to respond to three letters from P.M. requesting the refund and return of her file, Attorney Karlsson had failed to return property to which P.M. was entitled and had failed to refund any unused portion of the retainer in violation of SCR 20:1.16(d).

¶ 17. Likewise, the referee determined that by failing to respond to three letters from the Board staff and failing to appear at an investigative interview, Attorney Karlsson had not cooperated with the investigation of the P.M. grievance in violation of SCR 21.03(4) and SCR 22.07.

## COUNTS EIGHT, NINE, AND TEN

¶ 18. The Board's complaint alleged, and the referee found, that in July 1994 Attorney Karlsson was retained by C.M. to represent her in a personal injury claim stemming from a July 7, 1994, automobile accident. In March 1997, nearly four months before the

statute of limitations on C.M.'s personal injury claim was to expire, C.M. forwarded the final medical bill related to the accident to Attorney Karlsson along with a letter requesting information on the status of the case. Attorney Karlsson did not respond to that letter or to C.M.'s follow-up letters in July 1997 and October 1997.

¶ 19. C.M. and her husband thereafter made a series of telephone calls to Attorney Karlsson and sent her another letter in May of 1998; again Attorney Karlsson made no response to the calls or letters.

¶ 20. The referee also determined that Attorney Karlsson had failed to send a demand letter to the insurance company involved in C.M.'s claim before the statute of limitations on that claim expired.

¶ 21. In addition, the referee determined that Attorney Karlsson had failed to respond to letters from the Board staff including certified requests for responses; likewise, she failed to appear for the scheduled investigative interview and when she later appeared at the rescheduled interview and was asked to file a written response, she again failed to do so despite the Board's follow-up request.

¶ 22. Based on these findings, the referee concluded that by allowing the statute of limitations to run on C.M.'s claim without making discernible efforts towards settlement, Attorney Karlsson had failed to act with reasonable diligence and promptness in representing C.M. in violation of SCR 20:1.3.

¶ 23. Likewise, the referee concluded that by failing to respond to four letters and numerous telephone calls from C.M. requesting information about her case, and by failing to inform C.M. that the statute of limitations had run on her claim, Attorney Karlsson had failed to keep C.M. reasonably informed about the

status of the matter and had failed to comply with C.M.'s reasonable requests for information in violation of SCR 20:1.4(a).

¶ 24. In addition, the referee concluded that Attorney Karlsson's failure to respond to letters from the Board staff and her failure to appear for the investigative interview concerning the investigation into C.M.'s grievance, was a violation of SCR 21.03(4) and SCR 22.07.

## COUNTS ELEVEN, TWELVE, THIRTEEN, AND FOURTEEN

¶ 25. The Board's complaint alleged, and the referee found, that in February of 1993 Attorney Karlsson was retained by D.C. to represent him in a bankruptcy matter; D.C. paid Attorney Karlsson $800 as a retainer. The retainer agreement provided that it was "for bankruptcy . . . flat fee." Thereafter D.C. met with Attorney Karlsson on three occasions to complete the necessary paperwork. Subsequently D.C. made what he estimated to be 30 to 40 phone calls to Attorney Karlsson seeking information about the bankruptcy matter. Attorney Karlsson's own message slips in her office file for the D.C. bankruptcy reflect that she had failed to respond to at least four or five of D.C.'s calls.

¶ 26. The referee determined that after six years, D.C.'s bankruptcy still had not been filed. At that point D.C. contacted an attorney who had shared office space with Attorney Karlsson. That attorney attempted to assist D.C. in obtaining the return of the retainer and paperwork. That other attorney contacted Attorney Karlsson and urged her to complete the bankruptcy or refund the retainer. Attorney Karlsson responded that she would "take care of it." However, Attorney Karlsson

690

never filed the bankruptcy matter on behalf of D.C. and never refunded the $800 retainer fee to him.

¶ 27. In addition, the referee determined that when the Board's investigative staff asked Attorney Karlsson to respond to D.C.'s grievance, she did not do so; a subsequent certified letter made a similar request and again Attorney Karlsson did not respond, nor did she provide a written response as requested when she later met with the Board's investigator.

¶ 28. Based on these findings, the referee concluded that Attorney Karlsson's failure to take appropriate steps to advance the D.C. bankruptcy for almost seven years and her failure to file the bankruptcy action during the time she was representing D.C., established that Attorney Karlsson had failed to act with reasonable diligence and promptness in representing D.C. in violation of SCR. 20:1.3.

¶ 29. In addition, the referee concluded that by failing to respond to numerous telephone calls from D.C. and failing to write to him after mid-1993, Attorney Karlsson had failed to comply with her client's reasonable requests for information and failed to keep him reasonably informed about the status of the matter in violation of SCR 20:1.4(a).

¶ 30. Furthermore, the referee concluded that by failing to respond to two investigative letters from the Board's staff, Attorney Karlsson had failed to cooperate in the investigation of the D.C. grievance in violation of SCR 21.03(4) and SCR 22.07.

¶ 31. In addition, the referee concluded that Attorney Karlsson's failure to refund any portion of D.C.'s $800 retainer, even though she had never completed or even filed the bankruptcy, and her failure on termina-

tion of her representation of D.C. to refund any of the unearned portion of the retainer, violated SCR 20:1.16(d).

## COUNTS FIFTEEN, SIXTEEN, AND SEVENTEEN

¶ 32. The Board's complaint alleged, and the referee found, that in October of 1993 P.M.[7] retained Attorney Karlsson to represent him in a personal injury action stemming from injuries P.M. had sustained on October 2, 1993. Attorney Karlsson subsequently filed a personal injury action on behalf of P.M. on October 2, 1996. The defendant in that personal injury action then moved to dismiss it for failure to prosecute and for failure to answer written discovery requests, failure to appear at scheduled depositions, and failure to file a witness list.

¶ 33. At the public hearing before the referee in this matter, Attorney Karlsson and her former client, P.M., presented conflicting testimony as to whether Attorney Karlsson had communicated with P.M. about the defense discovery requests; also disputed was the question of whose fault it was that the discovery requests had not been answered in the P.M. case. The referee determined that even though the motion to dismiss the personal injury action had been denied, the circuit court had assessed $498 in costs against P.M. Attorney Karlsson, however, never notified P.M. of that assessment of costs.

¶ 34. At the public hearing in this matter, P.M. testified that he had been unsuccessful in obtaining a response from Attorney Karlsson about the status of his personal injury case after his deposition had been taken

---

[7] This individual is not the same P.M. involved in counts six and seven discussed above.

in the fall of 1997. Attorney Karlsson, on the other hand, claimed that she had kept P.M. reasonably informed about the status of the case through May of 1998.

¶ 35. The circuit court in the personal injury action ultimately granted summary judgment against P.M. as to all but one of the defendants and judgment was entered against P.M. for costs in the amount of $412.34. Although the default judgment in favor of P.M. against the remaining defendant in the amount of $5000 was later granted, Attorney Karlsson never prepared an order for the circuit court's signature and that judgment was never entered, nor did she inform P.M. about that judgment. When P.M. later received information that his personal injury action had been resolved, he and his father made numerous telephone calls to Attorney Karlsson in May and June of 1999 seeking information about the status of his case. P.M. also sent Attorney Karlsson a certified letter asking for information but she did not respond.

¶ 36. The referee determined that the Board's investigative staff sent an initial letter to Attorney Karlsson asking her to respond to P.M.'s grievance but she did not do so. Subsequently two other similar letters were sent by certified mail to Attorney Karlsson asking for her to respond to this grievance, and again she failed to do so.

¶ 37. Likewise, the referee found that after the P.M. grievance was referred to a district responsibility committee, an investigator from that committee attempted to call Attorney Karlsson six times during April and May 2000 but Attorney Karlsson never returned any of the telephone calls and never provided a response to the P.M. grievance investigation. The referee determined that, in fact, Attorney Karlsson had

never provided any information regarding the P.M. grievance until this disciplinary proceeding was commenced.

¶ 38. Based on these findings, the referee concluded that Attorney Karlsson's failure to respond to numerous telephone calls made by or on behalf of P.M. inquiring as to the status or outcome of his personal injury action, constituted a failure to keep her client reasonably informed about the status of the matter and her failure to respond to a client's reasonable request for information in violation of SCR 20:1.4(a).

¶ 39. In addition, the referee concluded that by failing to respond to several letters from the Board's staff and failing to respond to at least six telephone messages from the district committee's investigator, Attorney Karlsson had failed to cooperate with the Board's investigation of the P.M. grievance in violation of SCR 21.03(4) and SCR 22.07.

## COUNTS EIGHTEEN AND NINETEEN

¶ 40. The Board's complaint alleged, and the referee so found, that in January 1996 Attorney Karlsson was retained by D.D. to represent her in a partition action involving real estate D.D. had purchased with a friend. After she was retained by D.D., Attorney Karlsson contacted the parties in the real estate transaction and discovered that the land contract had never been recorded. Attorney Karlsson on behalf of her client, D.D., recorded the land contract and wrote several letters to opposing parties but the matter was not resolved at that time.

¶ 41. The referee found that more than three years after she had been retained, Attorney Karlsson met with D.D. to review the summons and complaint

694

Attorney Karlsson had drafted in the partition action. Several months later Attorney Karlsson informed D.D. that she was winding down her law practice and that she would refer the partition matter to another attorney. The referee determined, however, that Attorney Karlsson never referred the partition case to another attorney and never filed the summons and complaint she had drafted on D.D.'s behalf.

¶ 42. After D.D. filed a grievance, the Board's investigative staff wrote three letters, two by certified mail, asking Attorney Karlsson to respond but she never did. In addition, at the subsequent investigative interview, the Board's staff requested Attorney Karlsson to provide copies of her activities/telephone logs in D.D.'s case; that request was repeated in a follow-up letter but Attorney Karlsson never supplied the telephone logs.

¶ 43. Based on these findings, the referee concluded that by failing to either settle D.D.'s claim, file suit, or refer the matter to another attorney for over four years, Attorney Karlsson had failed to act with reasonable diligence and promptness in representing D.D. in violation of SCR 20:1.3.

¶ 44. In addition, the referee concluded that by failing to respond to several letters from the Board's staff and by failing to provide the activities/telephone logs as requested, and as she promised to do, Attorney Karlsson had failed to cooperate in the Board's investigation of the D.D. grievance in violation of SCR 21.03(4) and SCR 22.07.

¶ 45. In addition to hearing testimony concerning the various grievances in violation of the SCR, the referee also heard medical evidence presented by Attorney Karlsson concerning her consultations with an internist, an obstetrician-gynecologist, and a psycholo-

gist. The referee determined that although Attorney Karlsson's claims of intermittent anxiety and depression were verified, the medical records and reports from the internist did not demonstrate that Attorney Karlsson's medical condition caused her to commit the misconduct with which she was charged.

¶ 46. Similarly, the referee determined that the records and reports of the obstetrician-gynecologist did not relate to Attorney Karlsson's specific work performance, nor did they establish that her medical condition caused her to commit the misconduct.

¶ 47. With respect to the psychologist's report, the referee noted that the psychologist never offered a clear opinion of causality with respect to the majority of the misconduct counts at issue and that in any event, the psychologist's opinions were, according to the referee, "somewhat unclear." Accordingly, the referee discounted the psychologist's reports and opinion because of inconsistencies and the lack of detail in the records; the referee observed that the psychologist had made no notes or records for any meetings with Attorney Karlsson that had taken place before this disciplinary matter was commenced. Also, the referee noted that the psychologist's records did not reflect any meeting at all with Attorney Karlsson during the year 1999 which was the year during which attorney Karlsson had repeatedly failed to cooperate with the Board's investigations.

¶ 48. The referee concluded that the psychologist's diagnosis did not adequately establish causation for Attorney Karlsson's failings with respect to the seven client files at issue in this proceeding, especially since Attorney Karlsson had been able to maintain and represent other clients during this period when she was purportedly suffering from anxiety and depression.

¶ 49. Based on his findings and conclusions, the referee rejected Attorney Karlsson's suggestion that as a penalty for her misconduct in this matter, she be subjected to monitoring by the Board and mentoring by other attorneys. The referee also rejected Attorney Karlsson's claim that her non-cooperation with the Board's investigation had been caused by her illness, and therefore no restitution should be ordered and any costs in this matter should be waived.

¶ 50. Instead, the referee, based on his findings and conclusions of the 19 counts of misconduct, recommended that Attorney Karlsson's license to practice law be suspended for a nine-month period and that the following conditions be met before her license could be reinstated: (1) that Attorney Karlsson be required to refund the $800 retainer fee paid by D.C. for his bankruptcy proceeding; (2) that she be required to refund $100 she received in the E.G. case; (3) that for a period of two years after reinstatement Attorney Karlsson must arrange for another attorney, approved by the OLR director, to monitor Attorney Karlsson's practice in quarterly meetings with her at which the status of all of Attorney Karlsson's client files will be reviewed and the monitoring attorney will then submit quarterly reports to the OLR on the status of all pending matters in Attorney Karlsson's practice; and (4) that Attorney Karlsson pay the costs of this disciplinary matter within six months of this court's order and that if she fails to do so and fails to show an inability to pay the costs within that time, that she not be allowed to seek reinstatement of her license to practice law.

¶ 51. The findings of the referee are not clearly erroneous and we adopt them. We also agree with the conclusions of law set forth in the referee's report and his recommendation for sanctions. Attorney Karlsson's

misconduct with respect to the handling of the seven client grievances and her failure to cooperate with the Board's investigation are serious failings warranting a suspension of her license. We believe a nine-month suspension of her license to practice law in this state is appropriate discipline for her professional misconduct.

¶ 52. IT IS ORDERED that the license of Kathryn P. Karlsson to practice law in Wisconsin is suspended for a period of nine months, effective January 4, 2002.

¶ 53. IT IS FURTHER ORDERED that Kathryn P. Karlsson comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 54. IT IS FURTHER ORDERED that Kathryn P. Karlsson refund, within 60 days of the date of this order, with interest at 5%, the $800 paid to her by her client D.C. for his bankruptcy proceeding and $100 of the retainer she received in the E.G. matter. If these refunds are not made within the specified time, the license of Kathryn P. Karlsson to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 55. IT IS FURTHER ORDERED that within six months of the date of this order Kathryn P. Karlsson pay to the Office of Lawyer Regulation, as successor to the Board of Attorneys Professional Responsibility, the costs of this disciplinary proceeding totaling $17,923.83. If the costs are not paid within the time specified and absent a showing to this court of her inability to pay the costs within that time, the license of Kathryn P. Karlsson to practice law in Wisconsin shall remain suspended until further order of the court.