In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Bruce B. JACOBSON, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant-Respondent-Cross-Appellant,

v.

Bruce B. JACOBSON, Respondent-Appellant-Cross-Respondent.

Supreme Court

*No. 02–0931–D. Oral argument October 6, 2004.—Decided December 23, 2004.*

2004 WI 152

(Also reported in 690 N.W.2d 264.)

121

123

For the respondent-appellant-cross-respondent there were briefs by *Terry E. Johnson, C. Paul Snyder* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, and oral argument by *Terry E. Johnson.*

For the complainant-respondent-cross-appellant there were briefs by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy, Haas & Robinson, LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. We review the original and amended findings of fact, conclusions of law, and recommendations of Referee Rose Marie Baron for sanctions, pursuant to SCR 22.17(1).[1] Attorney Bruce B. Jacobson was found to have engaged in unprofessional

---

[1] SCR 22.17(1) provides: "(1) Within 20 days after the filing of the referee's report, the director or the respondent may file with the supreme court an appeal from the referee's report."

conduct in the course of his practice of law in violation of the Rules of Professional Conduct. The referee's amended recommendation was for a 90–day suspension of Attorney Jacobson's license to practice law with additional conditions.

¶ 2. We approve the original and amended findings, conclusions, and recommendations, except that we determine that the seriousness of Attorney Jacobson's misconduct warrants the imposition of a five-month suspension.

¶ 3. Attorney Jacobson was licensed to practice law in Wisconsin in 1971. He has not been the subject of a prior disciplinary proceeding.

¶ 4. This case covers 17 counts involving Client One (Counts 1–4 and 12–14), Client Two (Counts 5–6 and 15), Client Three (Count 7), Client Four (Counts 8–9), Client Five (Counts 10–11), and Client Six (Counts 16–17). The counts generally allege failure to communicate with clients and keep them informed, trust account discrepancies, misuse of client funds, and misrepresentation to and failure to cooperate with the Office of Lawyer Regulation (OLR).

¶ 5. The referee concluded that the OLR had not sustained its burden on five of the counts. The OLR has not appealed that conclusion. Of the remaining 12 counts where the referee concluded there had been misconduct, Attorney Jacobson has appealed on eight.

¶ 6. Both parties also appeal the referee's amended recommendation of a 90–day suspension. Attorney Jacobson submits this as excessive, particularly if he prevails on any of the eight counts of misconduct which he challenges, and the OLR submits the referee

should have reaffirmed her initial recommendation of an 18–month suspension.[2]

¶ 7. This court adopts the referee's findings of fact unless clearly erroneous. *In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d 380 (1993). No deference is granted to the referee's conclusions of law and they are reviewed de novo. *In re Disciplinary Proceedings Against Norlin,* 104 Wis. 2d 117, 310 N.W.2d 789 (1981). The court may impose whatever sanction it deems appropriate regardless of the referee's recommendation. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

## I. CLIENT ONE

¶ 8. Counts 1–3 alleged three separate violations of SCR 20:8.4(c)[3] (prohibiting dishonesty, fraud, deceit or misrepresentation).

¶ 9. Count 4 alleged violations of former SCR 20:1.15(b)[4] (a lawyer shall promptly notify a client and interested third parties in writing after receiving funds

---

[2] On July 2, 2003, this court granted Attorney Jacobson's motion to reopen this matter for additional evidence consisting of: (1) expert testimony relating to his physical, emotional, and mental condition during the period involved with this misconduct; and (2) testimony and evidence relating to his character and reputation in the community. The court directed that the referee was to consider this testimony and evidence solely as it might constitute a mitigating factor. The lower suspension recommendation resulted after the remand.

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] Former SCR 20:1.15(b) provided:

from the client and shall promptly deliver on request funds in which they have an interest and/or render a full accounting), and SCR 20:1.4(a)[5] (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

¶ 10. Counts 12 and 13 alleged violations of SCR 20:8.4(c) and Count 14 alleged a violation of SCR 20:8.4(f)[6] and SCR 22.03(6)[7] (jointly prohibit willful failure to provide OLR with information during the course of an investigation).

¶ 11. These counts involve Attorney Jacobson's representation of the client in a criminal failure to pay child support matter and a related family court matter. The client's wife initially gave Attorney Jacobson a

---

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[5] SCR 20:1.4(a) provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[6] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to: (f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[7] SCR 22.03(6) provides: "(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

non-refundable retainer of $1000 in October 1999. The client himself gave Attorney Jacobson $4000 in March 2000. Attorney Jacobson wrote three checks to himself from his trust account in the amounts of $2000/$1000/$2000 on March 17, 2000, April 25, 2000, and May 2, 2000, respectively. Two months after the last check, Attorney Jacobson wrote a check from his business account to this client's trust account for $1000.

¶ 12. Approximately one year later Attorney Jacobson wrote a bill for all of the services rendered to the client which totaled $9560 less payment received of $5000. The problem arose when, prior to having provided the client with his bill, the client's wife asked Attorney Jacobson to apply the funds in her husband's trust account (which she apparently thought were either $4000 or $5000) to his bail as he had recently been incarcerated. Attorney Jacobson informed her there was nothing in the trust account.

¶ 13. The client contended that the $4000 he gave Attorney Jacobson was supposed to be held by him in escrow as a "bargaining chip" in negotiations with the district attorney to reduce the pending charges against him (*i.e.,* to show his good faith and intent to pay his child support arrearage). However, Attorney Jacobson disputed this, claiming that no amount of money would have sufficed to reduce the charges and it was his understanding the entire $5000 was to be used as needed to pay his attorney's fees.

¶ 14. The referee concluded that the OLR had presented insufficient facts to sustain a finding of misconduct on Counts 1–3. She was particularly influenced by the fact that the client was not able to explain how, if indeed the payments were to be held in escrow, he still intended to pay Attorney Jacobson's fees given

the substantial legal work Attorney Jacobson had done for him. The referee stated:

> This is not a case where the attorney is accused of falsifying his time records, but rather seems to have arisen out of a misunderstanding about the purpose and application of funds paid by the client.... Jacobson's failure to explain to his client that he would be applying his fees to the amount in the trust fund certainly is not commendable. Nonetheless his actions do not rise to the level of conversion of those funds since he earned his fees. Mr. Jacobson's admitted practice of not sending regular bills to his clients, including [this client] nor keeping him reasonably informed about the status of the balance in his account gave rise to the problems now confronting Mr. Jacobson.

¶ 15. However, the referee found that misconduct had occurred with respect to Count 4 which arose out of Attorney Jacobson's failure to provide the client with requested information about the status of his trust account. The client testified that when he asked Attorney Jacobson to apply part of the funds to his bail, Attorney Jacobson said, "no, he couldn't do that" and when his wife later called Attorney Jacobson on several occasions to inquire about the funds, Attorney Jacobson failed to provide an accounting. He testified that Attorney Jacobson told her not to "worry about it" and also implied that it was not her "standing" to request billing information relating to her husband. The referee believed the version of this dispute as related by the client and his wife.

¶ 16. The referee also concluded that misconduct occurred with respect to Count 12 because Attorney Jacobson never sent a bill to his client, contrary to what he represented to the OLR, and did not prepare a bill until after the OLR began its investigation. Thus the

referee concluded that the OLR had adequately proved that Attorney Jacobson misrepresented what he told his client about moving the client's funds out of the trust account to pay his fees.

¶ 17. Finally, the referee found no misconduct relating to Counts 13 and 14. She concluded there was no evidence Attorney Jacobson misrepresented to the OLR that the $4000 payment made by his client was for attorney's fees, given that he reasonably believed that the funds were to be legitimately used for that purpose. She further concluded that Attorney Jacobson may simply have not brought up the initial $1000 retainer fee during the OLR's investigation, as opposed to misrepresenting that matter, because that initial payment was outside the general period that was the subject of the investigation.

¶ 18. The OLR accepts the referee's conclusion that there was no misconduct involved with Counts 1–3 and 13–14. However, Attorney Jacobson contests the conclusion of misconduct with respect to Count 12. He argues that in the absence of a full transcript of the OLR's investigation there is insufficient evidence that he misrepresented anything to the agency. He also insists that he did prepare a bill for the client's services because at the very least the billing information was on his computer which should qualify as a bill. Finally, he submits that any misstatements he may have made to the OLR were inadvertent and due only to his lack of information at the time.

¶ 19. The OLR responds that the testimony of its investigator was sufficient to provide the necessary evidence to support the misconduct finding. It further argues there was testimony from the client and his wife that they never received a bill and that it is disingenu-

ous to contend that something on Attorney Jacobson's computer that was never sent to the client would qualify as a bill.

¶ 20. We adopt the findings of fact and conclusions of law of the referee with respect to all of these counts. Both with respect to the counts on which no misconduct was found and the single count where there was a violation, we believe the referee was best situated to judge the credibility of the witnesses. There is no indication that the findings of fact that support the referee's conclusions are clearly erroneous.

¶ 21. We reject Attorney Jacobson's contention that the OLR had to present a full transcript of its investigatory process, rather than simply the testimony of its investigator, to provide the necessary evidence to support Count 12. We also reject his contention that billing information on his computer, which was never sent to the client, can be characterized as a bill.

## II. CLIENT TWO

¶ 22. Count 5 alleged another violation of SCR 20:8.4(c), Count 6 alleged another violation of SCR 20:1.15(b), and Count 15 alleged another violation of SCR 20:8.4(f) and SCR 22.03(6).

¶ 23. These counts arose out of Attorney Jacobson's representation of a client in a personal injury action. The client agreed to an $8000 settlement that would have provided him with a net payment of $3274.84 after attorney's fees of $2666.66 to Attorney Jacobson and $2058.50 to six healthcare providers.

¶ 24. Attorney Jacobson deposited the $8000 in his trust account on April 7, 2000, and immediately paid the client and himself. However, he did not pay the

131

providers or provide notice that there had been a settlement. Within a few days, however, he disbursed another $2000 from the trust account to himself for attorney's fees which, according to the referee's findings and conclusions, could only have come from the amount in the account that was to have been paid to the providers. Over a year later Attorney Jacobson told the OLR that he found six checks in his file payable to the providers which apparently had not been sent.

¶ 25. The referee concluded there had been a violation of Count 5 because of a conversion of funds to Attorney Jacobson that were supposed to have gone to the providers. The referee also concluded there had been a violation of Count 6 because Attorney Jacobson did not notify the providers that he was holding funds on their behalf. Finally, the referee concluded there had been a violation of Count 15 because Attorney Jacobson failed to disclose to the OLR that he knew his client was having trouble with his credit because the providers had not been paid.

¶ 26. The referee refused to accept Attorney Jacobson's explanation that he had simply made a mistake in not making the payments. She noted that within a few months of the providers not being paid, the client began to receive collection letters and he called Attorney Jacobson several times for an explanation. However, Attorney Jacobson never returned those calls. The referee concluded that even if Attorney Jacobson initially made a mistake with respect to paying the providers, there was no excuse for his failure to respond to his client's inquiries.[8]

---

[8] The client received $2058.50 from the Client Security Fund to pay the bills to which he added another $100 in interest of his own funds. The referee recommended as part of the

¶ 27. The referee further observed that Attorney Jacobson admitted he had not sent written notification to the providers.[9]

¶ 28. Finally, the referee found Attorney Jacobson's contention that he had no knowledge of any of the client's problems, such that he could have disclosed such knowledge to the OLR during its investigation, to lack credibility.

¶ 29. Attorney Jacobson concedes that he violated Count 6.

¶ 30. However, he argues that the conclusion with respect to Count 5 cannot be sustained because there was no evidence that he was attempting to defraud, cheat, deceive or mislead the providers. Rather, he claims that he merely "absent-mindedly, sloppily and even perhaps negligently" did not mail the checks.

¶ 31. Attorney Jacobson also disputes the conclusion that misconduct occurred with respect to Count 15. He contends he never actually knew of any problem

sanction in this case that Attorney Jacobson repay the Client Security Fund $2058.50 and his client $100. Attorney Jacobson neither admits nor denies that such repayment has ever been made. However, the OLR states that as of the date of oral argument the Client Security Fund had not been reimbursed. The order in this case assumes that neither the Fund nor the client have yet been reimbursed.

[9] The referee rejected Attorney Jacobson's argument that SCR 20:1.15(b) was unfair because it had the potential of alerting third parties as to funds that could be improperly attached or garnished. The referee correctly stated she did not have jurisdiction to overturn a supreme court rule nor was there any apparent legitimate fear with notifying these providers.

133

with this client until the OLR's full investigation. He basically asserts that the client's claims that he tried to call him about this problem should not be believed. Finally, he again claims that the OLR failed to keep a full transcript of the questioning during its investigation and this, coupled with this "imperfect recollections" renders the referee's findings and conclusions on Count 15 to be in error.

¶ 32. The OLR submits the referee could reasonably conclude there had been a violation of Count 5 because there was evidence the client called Attorney Jacobson on several occasions to discuss the non-payment to the providers. The OLR contends that the necessary intent can be inferred from the circumstances.

¶ 33. The OLR further responds that, once again, it is up to the referee to judge the credibility of its investigator and investigative process and there does not have to be a verbatim transcript of the investigation.

¶ 34. We find no basis to overturn the referee's findings and conclusions with respect to these counts. As noted, the referee had the benefit of listening to the testimony and assessing the credibility of Attorney Jacobson vis-à-vis his client. Further, as previously noted, the OLR investigatory process does not have to be memorialized by a transcript.

## III. CLIENT THREE

¶ 35. Count 7 alleged a violation of former SCR 20:1.15(a)[10] (property of clients to be held in trust).

---

[10] Former SCR 20:1.15(a) provided:

¶ 36. This count arose out of Attorney Jacobson's representation of a client for which he received an advance fee of $3500 which was placed in his trust account on May 4, 2000. Attorney Jacobson never actually performed any work for the client and issued a refund check to him over two months later. But when the $3500 was deposited, there was an overdraft of approximately $500 in the trust account which the $3500 helped bring back into balance. When the refund was made, the $500 overdraft, plus an overdraft charge, had not yet been repaid so the refund reinstated the negative balance in the trust account. In fact, since

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

135

there was not enough in the trust account to cover the refund Attorney Jacobson quickly had to deposit yet more funds from another client to cover it.

¶ 37. The referee concluded that Attorney Jacobson did not apply basic trust fund standards to the handling of his account and thus misconduct occurred.

¶ 38. Attorney Jacobson does not dispute the misconduct but relies on a mitigating factor that will be discussed later.

¶ 39. The findings of fact of the referee with respect to this count are not clearly erroneous and we agree with her legal conclusion that misconduct occurred.

## IV. CLIENT FOUR

██

¶ 40. Count 8 alleged another violation of SCR 20:8.4(c) and Count 9 alleged another violation of SCR 20:1.15(b).

¶ 41. These counts arose out of Attorney Jacobson's representation of a client in a personal injury action. He received a settlement on her behalf in July 2000 and was supposed to pay $890 of it to a healthcare provider but did not actually do so until August 2001 after the OLR began its investigation of the following grievance.

¶ 42. The investigation revealed that shortly after receiving this settlement, Attorney Jacobson did issue a check to the provider but there were insufficient funds to cover it. In any event, there was no evidence that the check was ever received and that the provider attempted to cash it. The insufficiency was due to the trust account problems resulting from the refund check issued to Client Three. The provider's office manager

testified that she contacted Attorney Jacobson on several occasions about the unpaid bill but never received a response.

¶ 43. The referee concluded that Attorney Jacobson violated Count 8 by using funds owed to the provider to pay Client Three. In addition, the referee concluded that misconduct with relation to Count 9 was proven by Attorney Jacobson's failure to provide written notification to the provider that he had its funds. The referee noted that when the settlement proceeds came in, Attorney Jacobson issued checks both to the client and to himself for attorney's fees, thereby implying there was no excuse for his failure to follow through on his obligation to the provider.[11]

¶ 44. Attorney Jacobson argues that although the supreme court rule does not specify an intent requirement in order to find dishonesty, fraud, deceit or misrepresentation, this is implicit. However, he concedes that intent can be inferred from the circumstances. But he again argues there is no evidence other than that he unknowingly wrote a check when the trust account was overdrawn.

¶ 45. Further, Attorney Jacobson argues it was the provider's fault that the initial check, even though overdrawn, was not, according to his version of the incident, logged in as received and then cashed.

¶ 46. Finally, Attorney Jacobson claims in general that the "tepid nature" of the OLR's proof on these counts is evident and the referee's findings and conclusions should be overturned.

---

[11] The referee again refused to consider the argument that SCR 20:1.15(b) unfairly demanded notice to third persons with an interest in funds.

¶ 47. In response, the OLR notes that Attorney Jacobson apparently concedes there were insufficient funds in his trust account to cover the initial check to the provider even if the provider failed to properly log and cash it.

¶ 48. Further, the OLR contends that the referee had the benefit of considering all of the evidence and could reasonably conclude that Attorney Jacobson never even sent the initial check and that the provider was not somehow at fault. The OLR submits it was proper for the referee to judge the credibility of determinations involved with this matter.

¶ 49. Finally, the OLR argues pursuant to *In re Disciplinary Proceedings Against Marks,* 2003 WI 114, 265 Wis. 2d 1, 665 N.W.2d 836 that the lack of actual knowledge or proof of purpose for intent is not a defense to SCR 20:8.4(c).

██

¶ 50. We conclude that there is no basis to overturn the referee's findings and conclusions with respect to these two counts. Attorney Jacobson clearly used the funds of others to cover a trust account shortfall and failed to issue the proper notice to the providers. It is unnecessary to prove the tort of misrepresentation in order to establish that an attorney has violated a rule of professional conduct involving dishonesty, fraud, deceit, or misrepresentation. *Id.* at ¶ 50; *In re Disciplinary Proceedings Against Schalow,* 131 Wis. 2d 1, 388 N.W.2d 176 (1986). Nonetheless, it was the referee's role to judge Attorney Jacobson's credibility with respect to intent, and the inference to be drawn from the evidence, and we cannot conclude that the findings in this regard are clearly erroneous or that the legal conclusions drawn from those findings are in error.

## V. CLIENT FIVE

¶ 51. Count 10 alleged another violation of former SCR 20:1.15(b). Count 11 alleged a violation of former SCR 20:1.15(e)[12] (requires preservation of complete trust account records for all six years).

¶ 52. These counts arose out of Attorney Jacobson's representation of a client and his wife in a personal injury and worker's compensation action. He received a settlement check for $78,000 in December 2000, $20,000 of which was to go to the subrogated worker's compensation carrier. Attorney Jacobson failed to notify the carrier of the settlement and did not pay the $20,000 until over three months later. Further,

---

[12] Former SCR 20:1.15(e) provided:

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

139

there was no evidence that Attorney Jacobson reconciled his trust account in the year prior to the $20,000 payment.

¶ 53. The referee concluded that these violations occurred and Attorney Jacobson does not challenge that conclusion.

¶ 54. We do not find any basis under the controlling standards to overturn the referee's findings and conclusions with respect to these counts.

## VI. CLIENT SIX

¶ 55. Count 16 alleged a violation of SCR 20:1.5(b)[13] (the basis/rate of fees shall be communicated to the client within a reasonable time after commencing representation). Count 17 alleged another violation of SCR 20:1.4(a) (the client shall be reasonably informed about the status of a matter).

¶ 56. These counts arise out of Attorney Jacobson's representation of a married couple on several occasions before 1996 when they came to him over a dispute involving construction of a home. He asked for a $4000 retainer. An initial payment of $1000 was made for which he spent six to ten hours reviewing construction documents to see if there was a basis for suit. A second $1000 was sent to him six months later, in mid-1997.

¶ 57. The clients claimed that the initial $1000 was to cover court costs and filing fees to actually commence the lawsuit. However, they had no specific

---

[13] SCR 20:1.5(b) provides: "(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

recollection of having discussed the exact nature of the fee and have no records to this effect.

¶ 58. Attorney Jacobson testified that he did not recall exactly whether this would be a flat fee or on an hourly basis but admitted there was no written retainer agreement. He conceded that his file on the matter was "not available—I have no idea where it is."

¶ 59. The clients also claimed that in mid-1998 they asked for a copy of the demand letter that Attorney Jacobson supposedly had previously sent to the builder. He admitted that he never sent them a copy.

¶ 60. The clients further claimed that in mid-1998 they first requested an itemized statement of services. This was followed by an early 1999 demand to the same effect which accompanied a notice terminating Attorney Jacobson's service and a request for a return of any of the unused $2000. This was followed by a third request for an itemized statement and a return of unused money a few months later in 1999. A fourth such request was made in late 1999. Attorney Jacobson stated in a letter after the fourth request, at a time when he knew the clients had already filed a grievance, that he would soon send an itemized statement, but he never did so.

¶ 61. The referee concluded there had been a violation of both counts. She held that Attorney Jacobson should have discussed the nature of the fee agreement with the clients given that the fee basis was apparently going to be different than when he had done prior legal work for them. She also noted that Attorney Jacobson never explained why he told the clients to bring in $4000 nor did he ever inform them how the $2000 that they did pay was being used. Finally, the referee concluded Attorney Jacobson had clearly failed

to respond to the clients' numerous requests for an itemized statement and return of any unused funds.

■■

¶ 62. Attorney Jacobson claims that because neither he nor the clients can recall whether there was a discussion of the basis for a fee, there was insufficient proof that he did not explain the fee and thus Count 16 is not proven.[14]

■■

¶ 63. Attorney Jacobson concedes there is sufficient evidence that he failed to provide the clients with the demand letter he had sent to the builder, and thus Count 17 was proven. However, he claims he could not provide them with a billing statement because he had already turned over his file to them which contained the notes he would have needed to prepare a bill.

¶ 64. The OLR argues in response that simply because neither side can recall whether the basis for the fee was discussed, Attorney Jacobson cannot validly claim that he "communicated" the fee basis as the rule requires. The OLR emphasizes that Attorney Jacobson admitted there was no written fee agreement and contends that therefore communication was inadequate.

¶ 65. The OLR further indicates that in late 1999 Attorney Jacobson admits having sent the clients a

---

[14] Attorney Jacobson also maintains that since he represented these clients before, under a strict reading of the rule there was no reason for him to explain the basis for the fee. He relies on the Comment to SCR 20:1.5(b): "When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee."

Attorney Jacobson's argument assumes that an understanding concerning the basis/rate of a fee have evolved here, which the referee did not find to be the case.

letter indicating that an itemized bill would soon be sent, without any hint that he did not have access to billing information. Further, the OLR notes that when Attorney Jacobson says he turned over the file to the clients in late 1999, he had already previously received several requests for billing information. Finally, the OLR states there is nothing in the record from the clients indicating that they indeed ever received the file.

¶ 66. We adopt the referee's findings and conclusions with respect to these counts.

¶ 67. The absence of a written fee agreement or any recollection by either side that the fees had otherwise been discussed supports the conclusion that Attorney Jacobson failed in his duty under the supreme court rule to communicate the basis/rate for the fee.

¶ 68. Attorney Jacobson concedes he never forwarded to the clients a copy of the demand letter. But his attempt to dismiss the failure to furnish a bill is not supported by the findings. Attorney Jacobson stated in the late 1999 letter—well after the clients' initial request for a bill—that he would furnish one, yet he did not do so. There was no evidence that he asked for return of the file, assuming it was ever sent to the clients, as a necessary step to prepare the bill.

## VII. SANCTIONS

██

¶ 69. The OLR initially requested a two-year suspension, restitution of the $2058.50 to the Client Security Fund (with repayment to the client of $100), two years of trust account supervision, and costs. Attorney Jacobson asked for a reprimand only.

¶ 70. The referee originally recommended an 18–month suspension plus the additional factors, including costs. The referee acknowledged that mitigat-

143

ing factors on the sanction could include mental disability and alcohol dependency provided the attorney suffers from such a condition, the condition caused the misconduct, recovery from the condition is demonstrated by a meaningful and sustained period of successful rehabilitation, and the recovery has stopped the misconduct suggesting that it is unlikely to recur. However, the referee noted that Attorney Jacobson's proffered evidence to support such mitigating factors was insufficient.

¶ 71. However, as previously noted, this court committed this matter to be reopened for additional evidence relating to Attorney Jacobson's physical and mental condition. Following the remanded proceedings, the referee issued amended findings, conclusions, and a recommendation. The suspension recommendation was reduced to 90 days. The referee also recommended that reinstatement be conditioned on not only two years of trust account supervision but also: (1) semi-annual reports for a period of two years from a psychiatrist or other healthcare provider indicating that Attorney Jacobson's depression and any other emotional or psychological problems that would impair his practice of law are under control; and (2) two years of monitoring of Attorney Jacobson's law practice by an OLR-approved attorney with reports of that monitoring to the OLR on a mutually agreed schedule.

¶ 72. At the remanded proceedings Attorney Jacobson primarily presented testimony from himself and a psychiatrist. The evidence and testimony revealed that on May 6, 2000, Attorney Jacobson suffered a heart attack and underwent double bypass surgery. This was followed by three months of rehabilitation. While recovering from the surgery, the psychiatrist found Attorney Jacobson to be anxious and depressed

144

and preoccupied with issues surrounding his medical situation such as the possibility of death or physical debilitation and concern about family and finances.

¶ 73. In the subsequent two years the psychiatrist saw Attorney Jacobson approximately 50 times and continues to see him one or two times a month at present as needed. In addition to his heart problems, Attorney Jacobson has reported other problems since mid-2000 including divorce, problems with his children, and a decrease in income. The psychiatrist has prescribed varying levels of anti-depressant medication since September 2000.

¶ 74. The psychiatrist testified that to a reasonable degree of medical probability there was a direct relationship between Attorney Jacobson's depression and his misconduct. The psychiatrist found an "extremely high degree of correlation" between the timing of the misconduct and the periods when Attorney Jacobson was reporting severe depression. The psychiatrist further stated that Attorney Jacobson is no longer depressed, is not on medication, is continuing therapy as needed, and his past self-destructive behavior is unlikely to recur.

¶ 75. The referee concluded that since all but the counts relating to Client One occurred during the 2000–2002 period during which Attorney Jacobson had heart and psychological problems, and given the causal testimony from the psychiatrist—which the referee characterized as an "extremely clear and thorough analysis" of the problem—his condition should be a mitigating factor. The referee stated:

> Depression is a devastating illness and its effects as described by Dr. Taxman were obvious in every aspect of Mr. Jacobson's life. There is no question that Mr.

145

Jacobson's ability to function as a lawyer was diminished and that he was unable to handle the myriad details of a sole practice, i.e., his depression and the failure to fulfill his duties as a lawyer co-existed for a lengthy period of time. As Dr. Taxman noted, fear and anxiety, as well as depression and certain personality traits, led to significant disorganization in Mr. Jacobson's life. . . .

The OLR's contention that the depression did not disable him from performing his legal duties is not supported by the evidence. It is my opinion that Mr. Jacobson's on-going depression was the cause of the misconduct which led to these disciplinary proceedings.

¶ 76. Attorney Jacobson concedes that if the 12 counts against him stand, a 90–day suspension is appropriate. But he argues that if less than 12 counts are upheld, the discipline should be reduced proportionately, perhaps even down to a public reprimand.

¶ 77. The OLR has a variety of objections to a reduction in suspension and wants the original 18–month suspension imposed. These include contentions that: (1) the psychiatrist offered only "vague general information" as to what problems a depressed attorney could encounter in his practice; (2) the psychiatrist was "very hesitant" to render an opinion on causation given that he was not an attorney; (3) the psychiatrist admitted that Attorney Jacobson's condition could not have led to any deceitful or dishonest information in communications with the OLR; (4) the psychiatrist never conducted formal testing on Attorney Jacobson and simply took his word as truth; (5) in addition to the matter with Client One, which predates the onset of Attorney Jacobson's condition, much of the misconduct with respect to Client Two also occurred in early 2000 before the heart attack and the overdraft

146

involving Client Three predated the heart attack; (6) at the same time Attorney Jacobson supposedly had severe problems, he apparently was functioning adequately in the other aspects of his practice suggesting that his depression, selectively caused him to misbehave only as to some of his clients; and (7) an 83 percent reduction in the recommended sanction is excessive in light of *In re Disciplinary Proceedings Against North,* 148 Wis. 2d 45, 434 N.W.2d 614 (1989), where somewhat similar mitigating circumstances only resulted in a reduction of the suspension from 12 months to 9 months.

¶ 78. We do not consider the psychiatrist's testimony regarding causation to be as vague as the OLR portrays it. He did concede that he was not familiar with the specifics of the numerous counts in this matter. Attorney Jacobson acknowledges that he only questioned his witness in a "more concentrated nature" regarding the connection between his condition and the misconduct. Yet the psychiatrist's opinion that there was a direct causal connection between the two was unequivocal.

¶ 79. However, we agree with the OLR that several of the 12 counts in which we have found misconduct to have occurred in whole or in significant part predate the onset of Attorney Jacobson's medical and psychological problems. We also agree that the fact that he apparently was able to serve other clients free of misconduct is also significant. Pursuant to *In re Disciplinary Proceedings Against Karlsson,* 2001 WI 126, 248 Wis. 2d 681, 635 N.W.2d 771, the fact that the attorney was able to maintain and represent other clients during the period when she purportedly suffered from anxiety and depression, coupled with unclear,

147

detailed and inconsistent evidence of causation, led the referee to reject this as a mitigating factor.

¶ 80. Accordingly, we believe that a suspension in excess of the referee's amended recommendation is necessary. Attorney Jacobson's 12 counts of misconduct represent a serious and persistent failure to comply with the Rules of Professional Conduct. Under these circumstances, we believe that a suspension of five months is warranted.[15]

¶ 81. IT IS ORDERED that the license of Attorney Bruce B. Jacobson to practice law in Wisconsin is suspended for a period of five months, effective January 27, 2005.

¶ 82. IT IS FURTHER ORDERED that Attorney Jacobson comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶ 83. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Jacobson shall: (1) pay $18,705.19 to the OLR representing the costs of this proceeding; and (2) pay the Client Security Fund $2058.50 and Client Two $100, plus interest at the statutory rate from the date the fund and client expended those amounts. If these costs are not paid within the time specified, and absent a showing to this court of an inability to pay those costs within that time, the license of Attorney Jacobson to practice law shall remain suspended indefinitely until further order of the court.

---

[15] The OLR asks this court to take judicial notice of another pending disciplinary proceeding against Attorney Jacobson, Case No. 04–0753–D, complaint filed March 12, 2004. We do so, however the pendency of that proceeding is not a factor in the disposition of this case.

¶ 84. IT IS FURTHER ORDERED that for a period of two years following Attorney Jacobson's suspension, semi-annual reports shall be submitted by his psychiatrist or other healthcare provider, as approved by the OLR, concerning the state of his psychological condition insofar as it might impair his practice of law. The first such report shall be filed six months after the date of suspension.

¶ 85. IT IS FURTHER ORDERED that for a period of two years following the date of his reinstatement to practice law, Attorney Jacobson's practice of law shall be monitored by an OLR-approved attorney on a schedule set by the OLR.

¶ 86. IT IS FURTHER ORDERED that for a period of two years after reinstatement Attorney Jacobson shall provide the OLR with quarterly reports, in a manner satisfactory to the OLR, concerning his trust account record keeping. These reports shall commence three months after the date of reinstatement.