IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Gino M. ALIA, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant-Cross-Respondent,

v.

Gino M. ALIA,
Respondent-Respondent-Cross-Appellant.

Supreme Court

*No. 2003AP2124–D. Oral argument October 7, 2005.*
*—Decided February 7, 2006.*

2006 WI 12

(Also reported in 709 N.W.2d 399.)

302

303

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) appeals, and Gino M. Alia cross-appeals, a referee's report concluding Attorney Alia engaged in professional misconduct and recommending his license to practice law in Wisconsin be suspended for 90 days, together with payment of the costs of the proceedings.

■■■■■■■■■■

¶ 2. Attorney Gino Alia was admitted to practice law in Wisconsin in 1995 and practices in Kenosha. He has not been subject to prior discipline.

¶ 3. In August 2003 the OLR filed a complaint alleging that Attorney Alia engaged in professional misconduct with respect to alterations he made to his expert witness's appraisal report, marked as an exhibit and used during a jury trial, and with respect to statements he made to the court thereafter. Joan Kessler was appointed referee. Following two days of hearings on February 23 and 24, 2004, the referee issued her report containing comprehensive findings and conclusions that satisfactory and convincing evidence support the complaint's allegations and recommending a 90–day license suspension.

¶ 4. The OLR challenges the recommended 90–day license suspension and argues that Attorney Alia's conduct warrants at a minimum a six-month suspension. Attorney Alia challenges the referee's findings and conclusions, and argues that the OLR failed to meet its burden of proof as to each count. He further argues that, in any event, no more than a public reprimand would be appropriate discipline.

¶ 5. Because satisfactory and convincing evidence support the referee's fact-findings, we adopt them. We further adopt her conclusions of law and agree that the seriousness of Attorney Alia's misconduct, together with mitigating factors, warrant suspension of his license to practice law for 90 days. We also agree that all costs of the proceeding, which are $22,174.29 as of December 8, 2005, should be assessed against Attorney Alia.

I

¶ 6. The events leading to the disciplinary proceedings may be summarized as follows: T.T. retained

305

Attorney Alia to file a misrepresentation action against R.C. and other defendants represented by Attorney Eric Olson. In 1997, T.T. had purchased a condominium home from R.C. T.T. claimed he relied on R.C.'s promise that a nine-hole golf course would be built adjacent to T.T.'s condominium. T.T. alleged the golf course was never built and, therefore, his condominium was less valuable than it would have been had the golf course been constructed.

¶ 7. In 1999, Attorney Alia filed an action on behalf of T.T. in Kenosha County Circuit Court. The case was assigned to Judge Bruce Schroeder and set for a January 31, 2000, jury trial. Attorney Alia retained an expert appraiser to assess the condominium's value for the purpose of proving damages at trial. Attorney Alia had not discussed with the appraiser the relevant time frame for the damage appraisal, but provided him with copies of pleadings and purchase documents.

¶ 8. The appraiser prepared his report, dated December 14, 1999, setting forth the condominium's value as of 1999 with, and without, the nine-hole golf course. The report indicated that T.T.'s damages were $78,000, reflecting the difference between the two values. The appraiser included evidence of comparable properties' values, also as of 1999. In January 2000 the appraiser mailed Attorney Alia two "originals" of the report and retained one copy. The report consisted of more than 30 pages secured in a plastic spiral binding, with a clear plastic cover. The report's title page, with a color photograph of the condominium unit, showed through the clear plastic cover.

¶ 9. No pretrial order required Attorney Alia to share the report with opposing counsel and, accordingly, he did not provide Attorney Olson a copy before trial. After receiving the report, Attorney Alia conferred

with other attorneys at his law firm and determined the appropriate time frame for valuing the condominium for the purpose of proving damages at trial was during 1997, not 1999.

¶ 10. On January 26, 2000, Attorney Alia met with his appraiser and gave him a copy of the proposed jury instruction describing the measure of damages. Attorney Alia, for the first time, told him that 1999 was not the proper year for valuation purposes and reference to 1999 values would not be admissible at trial. Attorney Alia's understanding was the appraiser would revise his calculations based on 1997 values and that T.T.'s damages, based on 1997 figures, would reflect the same loss as that based on 1999 values, $78,000. Attorney Alia did not, however, request the appraiser prepare a new appraisal with 1997 values.

¶ 11. At the disciplinary hearing, Attorney Alia stated his client, T.T., and one other client, jointly retained the appraiser in October or November of 1999, for the sum of $1200. The two clients would equally share the expense. Attorney Alia maintained that on Thursday, January 27, 2000, after he had met with the appraiser, he made all the whited-out redactions to the report observed on the second day of trial, "to have a redacted report available to [the appraiser] in the event he needed to refer to it without the inadmissible evidence." Attorney Alia concedes he had not advised the appraiser his report would be altered in any way.

¶ 12. At the disciplinary hearing, Attorney Alia also presented the testimony of witnesses, including his friend and former colleague at the law firm, that Attorney Alia was observed before the first day of trial, making whited-out changes in a report that was to be used at trial. Attorney Alia also presented his wife's

307

testimony that she did not observe him make any white-out changes after the end of the first day of trial.

¶ 13. On January 31, 2000, the first day of the jury trial, both Attorney Alia and Attorney Olson had all anticipated trial exhibits pre-marked. One of the exhibits was Attorney Alia's expert appraiser's report, which was pre-marked exhibit 21.

¶ 14. At the start of the trial, Attorney Alia moved to prohibit reference to his client's efforts to sell the condominium for substantially more than he originally paid. The court granted this motion.

¶ 15. When Attorney Alia's appraiser testified as an expert witness before the jury, he brought documents to the stand, which were not marked as exhibits and did not remain in court when he left. Attorney Alia asked the appraiser, "what the actual value of the [T.T.] condominium was at the time of purchase back in 1997." The appraiser testified that it was approximately $185,000.

¶ 16. Attorney Alia next inquired: "And in terms . . . to a reasonable degree of professional certainty what the value of the [T.T.] condominium was as represented; in other words, as being on a 9 hole golf course?" The appraiser replied, "about $266,000." The appraiser agreed T.T. sustained a loss of $78,000 because the condominium was not as represented. He explained his opinion was based on "taking a look at sales of properties that were on golf courses and sales of properties that weren't."

¶ 17. Toward the conclusion of his direct examination, Attorney Alia displayed exhibit 21 and inquired as follows:

Q. [D]id you prepare a report in this case?

A. Yes, I did.

Q. And you prepared a report looking at the value of the property today as well?

A. No, I did not.

Q. Well, I'm sorry. As of the time of your report?

A. Yes.

Q. Okay. And that is the basis for your opinions as to the value of the loss sustained by [T.T.] in this case?

A. That's correct.

Q. I'm showing you a document that's probably in excess of 30 pages. . . . [C]ould you identify for the jury what that is?

A. This document was the appraisal report that I compiled for this property. It spells out what the property is . . . plus the comparable sales and a conclusion of value . . . .

¶ 18. The referee determined that through this testimony, Attorney Alia had his expert witness identify exhibit 21 as a copy of his appraisal report. Because Attorney Alia had altered the report marked as exhibit 21, Attorney Alia knew that it contained alterations from the appraiser's original report.[1] It is undisputed Attorney Alia had not, however, disclosed the alterations to the appraiser, Attorney Olson, the court, or the jury.

---

[1] It was later determined that the copy of the appraiser's report marked as exhibit 21 on the first day of trial had two alterations at the time Attorney Olson made his photocopy: (1) the listing price of the condominium had been whited-out, and (2) the front cover containing a photo of the condominium contained a photocopy which obscured a realty sign that appeared on the original cover.

¶ 19. Attorney Alia never formally offered exhibit 21 into evidence. After the testimony ended, and the jury was excused, Attorney Olson asked Attorney Alia if he could photocopy the appraisal report. Attorney Alia agreed but insisted Attorney Olson hurry because Attorney Alia wanted to leave and take his materials with him. Attorney Olson obtained exhibit 21 and went to photocopy it, taking about five minutes. After Attorney Olson returned exhibit 21 to the courtroom, Attorney Alia and his wife left the courthouse with some of his trial materials.

¶ 20. On the morning of the second day of trial, February 1, 2000, Attorney Olson cross-examined T.T. Attorney Alia objected on grounds of relevance and hearsay to a question Attorney Olson asked regarding the appraisal. Judge Schroeder convened outside the jury's presence to discuss the objection.

¶ 21. During the discussion, Judge Schroeder inquired whether the appraiser had testified as to current value. He noted the appraisal report stated an effective date of December 14, 1999, and that the comparables the appraiser used to determine the value of T.T.'s condominium were from 1999 sales. Attorney Alia said the appraiser testified as to the 1997 value. Judge Schroeder observed, "his report does not say any such thing," and explained, "the problem is your evidence does not mesh with your case," because the appraiser "gives his valuation as of now."

¶ 22. Judge Schroeder also stated that an opinion as to 1997 value would certainly "not be in conformity with the report." The judge added he would not want to make a finding as to value without some expert evidence, "anymore than I would want to find that the appraisal as of now has any meaning in 1997, particularly in the fluid market."

310

¶ 23. After further discussion, the trial resumed. Attorney Olson's copy of the appraisal report, which he had made the day before and which bore a photocopy of the exhibit 21 sticker, was marked exhibit 24. During his cross-examination of T.T., he referred to the appraisal and showed him exhibit 24. Attorney Alia requested to be "heard on this exhibit." The circuit court denied his request and asked whether there was an objection. Attorney Alia objected as to foundation.

¶ 24. Attorney Olson responded, "This is Defendant's Exhibit 24, a Xerox copy of plaintiff's exhibit. [The expert witness's] appraisal which he testified from yesterday." The court asked why he did not use the original and Attorney Alia located exhibit 21, which had not been offered into evidence. Attorney Olson observed exhibit 21 was different than the day before, saying "It's whited out so it's different than when I copied it yesterday."[2]

¶ 25. At Attorney Alia's request, Judge Schroeder convened outside the jury's presence. As Judge Schroeder compared exhibit 21 with exhibit 24, Attorney Olson pointed out differences, and Attorney Alia

---

[2] On the second day of trial, the exhibit 21 contained numerous alterations, in addition to the two alterations discovered on Attorney Olson's copy marked exhibit 24 that he photocopied on January 31.

The alterations observed on February 1 include whited-out redactions on pages 3 and 5, to obliterate the 1999 values; on page 18, to obscure the square footage calculations; on page 19, value without the golf course and an entire sentence calculating value based on square footage eliminated; on page 20, obscured listing price of $239,000 and a comparison value of $210,000; on page 21, the 1999 value without the golf course obscured; on an attached exhibit D, 1999 values of the listing price and comparison whited-out.

said, "I was going to show you the original report, which is what he copied." After additional discussion, Attorney Alia then produced the "original report," which the clerk marked exhibit 25. Judge Schroeder asked, "You state, Mr. Alia, that when Mr. Olson asked for a copy of the report you gave him Exhibit 25?" Attorney Alia said, "Correct. I may have gave [sic] him both exhibits."

¶ 26. There were no alterations to exhibit 25. The referee found there was no evidence Attorney Olson had ever seen it or knew of its existence before it was marked as exhibit 25. Attorney Olson insisted he took only one document with him to be photocopied, exhibit 21. He asked for an explanation for the whited-out redactions on exhibit 21. Attorney Alia responded:

> It was redacted when I met with [the appraiser] on Tuesday afternoon or Wednesday afternoon. We had talked about it. We went over the numbers and there — there was a redacted copy. I have the original copies as well and so — I mean technically there are two reports out there. There is [sic] the ones with the numbers and the ones with the redacted numbers. The calculations come out the same, $78,000.00, but it's talking -- one report talks in terms of the 1999 valuation of 210 vs. 288, which the jury is not to consider. And the other one talks just in terms of his testimony being 188 vs. 266.[3]

¶ 27. Attorney Alia further stated, "If the Court wants to enter both reports, I have no problem with that. But the jury is going to be misled as to the figures and the calculation that they have to do." Attorney Olson replied that the jury would be "plenty confused if they ask for the exhibit and one has been whited out

---

[3] Based on this statement, the referee found: "Alia represented in court that he had original copies (more than one) and that he had already redacted a copy when he met with [the appraiser] prior to trial. That latter representation was untrue."

and one hasn't," and would want an explanation. Judge Schroeder indicated he also wanted an explanation.

¶ 28. After further discussion, the court reconvened and excused the jury. Later, in response to Judge Schroeder's inquiries, Attorney Alia stated there was an original and two redacted copies of the report, but he was unsure what exhibit 25 was. This statement conflicted with his previous statement that "clearly there is [sic] two reports and the one that [the appraiser] acknowledged as his exhibit was the redacted copy." Attorney Alia also said that as far as he knew, both originals were not whited-out. Attorney Alia said, "21 is the redacted copy. There is — which has just been marked 25 is another copy. There is another copy that [the appraiser] may have or not have . . . ."

¶ 29. Following a recess, discussions continued in chambers. Attorney Alia explained he met with the appraiser the previous week, they went over the various elements of proof he needed and, "[s]ometime between our meeting and the trial the portions concerning the 1999 values were redacted . . . . Do I know exactly . . . when it occurred, honestly I can't say I do."

¶ 30. In response to the court's inquiry whether Attorney Alia made the changes, Attorney Alia replied, "I redacted this document. There is no question about that. . . . I did it before the trial started."

¶ 31. After more discussion, Attorney Olson moved for dismissal, with costs. Attorney Alia objected, stating that the possibilities "include that either Mr. Olson, [the defendant,] or someone else removed a copy and has altered the document as well." The court initially ruled it would continue the trial "[a]nd I'm going to leave it to the parties to handle their evidence as they see fit in terms of what the jury finds out about

what's occurred." Following consultation with his client, Attorney Alia alternatively requested an adjournment or a mistrial.

¶ 32. After another recess, Judge Schroeder telephoned the appraiser from chambers in both counsels' presence. The appraiser acknowledged the report he brought to the stand when he testified was unaltered. While the appraiser was still on the line, and in response to Judge Schroeder's question, Attorney Alia responded that the appraiser had not consented to alteration of his report. The appraiser, in response to Judge Schroeder's questions, said he had no discussion with Attorney Alia in which Attorney Alia indicated he was going to cross off or cover anything in the report.

¶ 33. Attorney Alia again requested a mistrial. He stated, "the reports I had and the various [appraiser's] reports that I had in my possession are not all accounted for . . . ." Attorney Alia said the defendant had kept overnight the copy Attorney Olson had made of exhibit 21. The defendant, R.C., denied making any changes to Attorney Olson's copy.

¶ 34. Judge Schroeder determined the most appropriate course would be to declare a mistrial and decide the question of costs at a later date. The judge excused the jury. Months later, at a May 31, 2000, motion hearing before Judge Schroeder, Attorney Olson asserted that Attorney Alia changed exhibit 21 between the end of the day on January 31 and his cross-examination of T.T. the next day by whiting-out information harmful to his case and the credibility of his expert witness. Attorney Alia countered by asserting Attorney Olson or his client stole a copy of the report from his papers, together with exhibit 21, and had fabricated exhibit 24 from exhibit 21 and the missing

report. Attorney Alia alleged, "an unredacted report, was taken from my trial materials and papers and pages were substituted."

¶ 35. In July 2000 Judge Schroeder held another hearing to take testimony in an attempt to resolve the dispute regarding the various versions of the report. In October, Judge Schroeder issued a written decision dismissing T.T.'s suit on the merits, found egregious misconduct by Attorney Alia and awarded costs and attorney's fees to R.C. in the amount of $11,618.40. T.T. appealed. The court of appeals affirmed and this court subsequently denied a petition for review. *See Teubel v. Prime Dev., Inc.,* 2002 WI App 26, 249 Wis. 2d 743, 641 N.W.2d 461.

¶ 36. The OLR's disciplinary complaint against Attorney Alia alleges five counts of misconduct. The referee determined the OLR met its burden of proof with respect to all five counts. The referee summarized her assessment of the nature of the violations:

> The conduct is serious because it involves the personal integrity of an attorney and challenges the integrity of the judicial system. The injury caused to the adverse party . . . has, to a large degree, been rectified by the sanctions reflected in the court record . . . imposed by Judge Schroeder. The injury to the judicial system, in the form of substantial time spent trying to determine the truth, goes uncompensated. It was exacerbated by Attorney Alia's unclear, confusing, and contradictory statements to the court and by his actual misrepresentations to the court and unfounded accusations against his adversary. . . . Alia made more redactions to try to keep the information from the jury, then tried to develop different explanations as to the reason for the differences. He continued the deception and cover-up of his conduct by never involving his supervisors or his firm until after sanctions had been imposed.

¶ 37. The referee also notes, "Attorney Alia did not seem to understand, even during the disciplinary hearing, that there is anything fraudulent or deceitful about altering an expert's report without the expert's specific approval and without notifying the court and opposing counsel of the alterations in advance of using the document in any court proceeding." The referee recommends a 90–day license suspension and also that Attorney Alia be responsible for the costs of the proceeding.

## II

¶ 38. We first address the counts charged and the evidence supporting each count. We then turn to Attorney Alia's arguments challenging the referee's factual findings, her conclusion that the OLR met its burden of proof as to each count, and her evidentiary rulings. Lastly, we will consider the parties' arguments as to the appropriate sanction.

A. Count I: SCR 20:3.3(a)(4)

¶ 39. The first count of the disciplinary complaint alleges Attorney Alia violated SCR 20:3.3(a)(4), which provides that a lawyer shall not knowingly "offer evidence that the lawyer knows to be false." The question for this court is whether the record demonstrates by clear and convincing evidence that Attorney Alia violated SCR 20:3.3(a)(4). *See* SCR 22.16(5).[4] We do not

---

[4] SCR 22.16(5) provides that "[t]he office of lawyer regulation has the burden of demonstrating by clear, satisfactory and convincing evidence that the respondent has engaged in misconduct."

overturn a referee's finding of fact unless clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law de novo. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718.

¶ 40. The referee concludes:

> When Alia had [the appraiser] identify Ex. 21 as a copy of [the appraiser's] report, although Alia knew he had made white out changes to Ex. 21, he knowingly offered false evidence in the form of false testimony by [the appraiser]. Further, Alia used a document, Ex. 21 which he knew he had changed from the original expert report and falsely held out Ex. 21 to the court, the jury and the expert witness. as an accurate copy of the original report.

¶ 41. The evidence supports the referee's determination. Attorney Alia admitted to making whited-out redactions to the appraisal report before trial. It is undisputed that the alterations were made without the appraiser's knowledge or consent. On the first day of trial, Attorney Alia referred to the altered copy of the report, marked as exhibit 21, and asked the appraiser, "And that is the basis for your opinions as to the value of the loss sustained by [T.T.] in this case?" To which the witness replied, "That's correct." Attorney Alia showed him the exhibit, which the witness identified, saying, "This document was the appraisal report that I compiled for this property." Thus, his own expert witness, the jury, the court and counsel were led to believe that exhibit 21 was an unaltered copy of the appraiser's report.

¶ 42. We agree with the referee's conclusion that Attorney Alia's failure to say, "I offer Ex. 21" does nothing to diminish the impact on the jury, the court

and opposing counsel that exhibit 21 was an accurate version of the original report. The record establishes Attorney Alia made alterations to the appraiser's report before trial, had the altered copy marked as exhibit 21, and elicited his expert's testimony to the effect it was an accurate copy of the appraiser's report when, in fact, Attorney Alia knew it was not. It is undisputed that Attorney Alia had not, however, disclosed the alterations to the appraiser, counsel, the court, or the jury. By representing the altered report as an unaltered version through its use at trial, Attorney Alia knowingly offered false evidence in the form of false testimony. Therefore, clear and convincing evidence supports the referee's findings of fact and conclusion that the OLR met its burden of proof with respect to Count I.

B. Count II: SCR 20:3.4(a) and SCR 20:8.4(c)

¶ 43. The second count alleges Attorney Alia violated SCR 20:3.4(a) which addresses fairness to opposing party and counsel, and provides that a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document . . . having potential evidentiary value."

¶ 44. Alternatively, Count II also alleges Attorney Alia violated SCR 20:8.4(c) which provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

¶ 45. The referee determined Attorney Alia's conduct violated both these sections

> when he altered [the appraiser's] report without telling the court, opposing counsel, or the expert witness, and

318

by making further redactions after the expert had testified (and identified the altered report as [the expert's] work when the redactions were not his work). This conduct obstructed Olson's access to evidence, by destroying or concealing information in a document which had potential evidentiary value. This conduct involved misrepresentation because Alia held out Ex. 21 as [the appraiser's] work when he knew it was not.

¶ 46. The record supports the referee's finding that Attorney Alia made additional alterations to exhibit 21 after his expert witness testified on the first day of the trial. Because Attorney Olson's copy, marked exhibit 24, made at the end of the first day of trial, had a copy of the exhibit 21 sticker, and contained only two alterations, it was reasonable for the referee to find that the report contained the two alterations at the end of the first day of trial. Because on the second day of trial exhibit 21 contained many more alterations, it was reasonable for the referee to find that additional alterations to exhibit 21 had been made after the first day of trial.

¶ 47. The referee found only two possible explanations emerged for the differences between exhibits 21 and 24. One was, "Alia made changes, by additional white out of 1999 values and references to sales information during the break between the two days of trial."

¶ 48. The other potential explanation was that "Olson, in Alia's presence, stole or accidentally took two reports, had time to review them both, find the significant differences and copy only one of the reports, all in approximately five minutes, return one document to court in Alia's presence, and later allow [his client] to collate the two copies into a combined new document."

¶ 49. Because the referee found there was no evidence to show that at the time Attorney Olson made

his copy he even knew there were multiple or different copies of the report, and no evidence he had two copies, the referee rejected the latter explanation. We conclude that the referee's finding that Attorney Alia made additional alterations to exhibit 21 after his expert witness testified on the first day of trial is reasonably supported by the record and, therefore, do not disturb it on appeal. Accordingly, we agree with the referee's determination that the OLR met its burden of proof as to Count II.

C. Count III: SCR 20:3.4(b)

¶ 50. In Count III, the OLR charges that the same evidence supporting Count I also supports a violation of SCR 20:3.4(b), which provides that a lawyer shall not "falsify evidence, counsel, or assist a witness to testify falsely . . . ." The referee concludes the OLR met its burden of proof as to Count III when it demonstrated Attorney Alia elicited his expert appraiser's testimony to identify exhibit 21 as his own report, when in fact Attorney Alia knew it did not represent an accurate copy. We conclude that the record permitted the referee to conclude that Attorney Alia changed the expert witness's appraisal without his knowledge or permission and then permitted the appraiser to testify falsely to the effect that exhibit 21 represented an accurate copy of his report, contrary to SCR 20:3.4(b).

D. Count IV: SCR 20:3.3(a)(1)

██

¶ 51. Count IV charges Attorney Alia with violating SCR 20:3.3(a)(1), which provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal." The referee found Attorney Alia knowingly

made false statements to the court when he stated, and led all parties to believe, that he had made alterations to exhibit 21 in advance of the expert witness's testimony, and by claiming all changes in the expert report were made with the appraiser's knowledge and approval. The referee concludes that this evidence demonstrates the OLR met its burden of proof with respect to Count IV.

¶ 52. The record supports the referee's findings and conclusion. On the second day of trial, in chambers with Judge Schroeder, Attorney Alia indicated he made the whited-out changes when he met with the appraiser several days before trial.[5] Attorney Alia's statements that "[i]t was redacted when I met with [the appraiser]" and that "[w]e talked about it" support the referee's finding that Attorney Alia claimed all changes in the expert report were made with the appraiser's knowledge and approval. Attorney Alia subsequently stated that he made all the alterations after he met with the appraiser on Thursday, January 27, without the appraiser's knowledge. This latter statement confirms that his first statement was untrue.

¶ 53. Also, Attorney Alia maintained he had made all changes to the report before the trial, and made no changes after the document was marked as exhibit 21. However, because on the first day of trial, Attorney Olson made a copy of exhibit 21 showing just two alterations, but on the second day of trial exhibit 21 had many more alterations, the referee was entitled to find

---

[5] Attorney Alia stated: "It was redacted when I met with [the appraiser] on Tuesday afternoon or Wednesday afternoon. We talked about it." At the disciplinary hearing, Attorney Alia's witnesses testified to seeing Attorney Alia make whited-out changes to a report on January 27. Attorney Alia also testified that he made all the redactions on the evening of January 27, 2000. That was the day after he met with the appraiser.

that Attorney Alia made alterations to exhibit 21 between the first and second days of trial. Therefore, the evidence permits the determination that Attorney Alia's statement to Judge Schroeder that he made all redactions before trial was untrue. Consequently, the referee was entitled to conclude that the OLR met its burden of proof as to Count IV.

E. COUNT V: SCR 20:8.4(c)

¶ 54. The last count of the disciplinary complaint, Count V, charges that Attorney Alia violated SCR 20:8.4(c), which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The referee concludes the OLR met its burden of proof with respect to Count V in three ways. First, Attorney Alia induced the appraiser to authenticate a report that Attorney Alia knew was not in fact an accurate copy of his report. Second, Attorney Alia falsely accused Attorney Olson and/or his client of fabricating exhibit 24 from other unidentified documents that had been solely in Attorney Alia's possession and about which Attorney Olson had no knowledge. Third, Attorney Alia accused Attorney Olson of being untruthful with the court.

¶ 55. This opinion has already discussed Attorney Alia's inducement of false testimony and need not repeat the discussion here. Also, we have previously noted the record supports the referee's determination that there was no basis for any accusation against Attorney Olson. Because eliciting false testimony and making baseless accusations against opposing counsel that he fabricated evidence and was untruthful with the court is dishonest and deceitful, this conduct provides a

basis for a violation of SCR 20:8.4(c). Consequently, we do not overturn the referee's determination that the OLR met its burden of proof with respect to Count V.

## III

¶ 56. We next turn to Attorney Alia's arguments that the referee's findings are clearly erroneous, that the OLR failed to meet its burden of proof with respect to each count, and that the referee made erroneous evidentiary rulings.

¶ 57. Attorney Alia insists the referee found he had no actual knowledge of any wrongdoing, pointing to the referee's observation he "did not seem to understand . . . that there is anything fraudulent or deceitful" about altering an expert's report and using it in court without notifying the court and opposing counsel in advance. He claims the OLR must prove actual knowledge of wrongdoing, relying on *In re Disciplinary Proceedings Against Lucareli,* 2000 WI 55, ¶ 31, 235 Wis. 2d 557, 611 N.W.2d 754.

¶ 58. The *Lucareli* case is inapposite. In *Lucareli,* "knowledge" of wrongdoing was not the issue. Instead, the issue was whether the supreme court rules referred to the "actual" versus constructive knowledge of a fact. *Id.,* ¶ 34. The referee concluded that Attorney Lucareli, the prosecutor who was the subject of the disciplinary proceeding, did not have actual knowledge that the criminal charge he filed against a defense attorney was not in fact supported by probable cause. Therefore, the referee determined Attorney Lucareli did not violate SCR 20:3.8(a).[6]

_____
[6] SCR 20:3.8(a) entitled "Special responsibilities of a prosecutor" provides that the prosecutor in a criminal case shall

¶ 59. In contrast, here Attorney Alia's knowledge that he made whited-out redactions to portions of exhibit 21 is undisputed. Contrary to Attorney Alia's protestations, the referee made no finding that Attorney Alia lacked actual knowledge of any factual element of the violation. Instead, the referee remarks that Attorney Alia failed to appreciate the significance of his deceitful conduct. Thus, the referee's comment indicates Attorney Alia lacked an understanding of professional standards, rather than of a factual element of the alleged violation as in *Lucareli*. *Id.*, ¶ 29. Consequently, Attorney Alia's argument fails.

¶ 60. In a related argument, Attorney Alia contends the record lacks proof of any subjective intent to deceive. He claims his alterations to the report did not violate SCR 20:3.3(a)(4), because many court documents are routinely redacted, to remove what has been ruled inadmissible. He cites, for example, *State v. Gordon,* 159 Wis. 2d 335, 464 N.W.2d 91 (Ct. App. 1991), in which an informant's statements were redacted to protect identity. Attorney Alia offers no authority, however, that court exhibits are routinely redacted without

"refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause."

The referee concluded, and this court agreed, that under SCR chapter 20, "Knowingly," "Known" or "Knows" denotes "actual knowledge of the fact in question." *In re Disciplinary Proceedings Against Lucareli,* 2000 WI 55, ¶ 30, 235 Wis. 2d 557, 611 N.W.2d 754. Thus, the Board's argument that Attorney Lucareli should have known "that the circuit court had determined that the psychologist's notes were not confidential patient health care records" was rejected. *Id.*, ¶ 29. Accordingly, this court sustained the referee's finding with respect to Attorney Lucareli's knowledge of the non-confidential nature of the psychologist's notes. *Id.*, ¶¶ 31–32.

the knowledge of opposing counsel and approval of the tribunal. Therefore, Attorney Alia's argument is rejected.

¶ 61. Attorney Alia further claims that since the whited-out changes he made were readily observable and, because he brought the issue to everyone's attention, albeit after his witness testified, he concealed nothing. This argument discounts his failure to bring the alterations to anyone's attention on the first day of trial, when he used exhibit 21 while examining his expert witness. It also omits discussion that it was not until the second day of trial, after the discussion with Judge Schroeder that Attorney Alia's proof did not "mesh" with his case, and not until the midst of Attorney Olson's cross-examination of T.T., in which Attorney Alia objected to the use of exhibit 24 and the court requested the use of exhibit 21, that it was Attorney Olson who brought to the court's attention the existence of the whited-out redactions on exhibit 21. At that point, Attorney Alia asked to discuss the exhibit outside the jury's presence and subsequently told the court he made the redactions. By glossing over chronological details, Attorney Alia's argument mischaracterizes the record and is unpersuasive.

■

¶ 62. Attorney Alia contends, nonetheless, he did not falsify any evidence. He claims the two alterations he was found to have made before the first day of trial were not really false evidence because the realty sign was not readily visible on the original report and there was nothing sinister about whiting-out the inadmissible listing price.[7] He argues, therefore, that the mean-

---

[7] For purposes of clarity, we note that this argument, while based on the referee's findings, is inconsistent with Attorney

ing of the report had not been changed and, accordingly, there was nothing false about the appraiser's testimony that exhibit 21 was a copy of his report.

¶ 63. Attorney Alia's arguments must fail. Whether the obliterations he made to the report resulted in deleting inadmissible or irrelevant information, leaving the balance of the report's contents as a truthful rendition of his expert's opinion is beside the point. What made Attorney Alia's conduct a violation was that he represented exhibit 21 to the court and the jury as an accurate rendition of the original version, when he knew, in fact, it was not. *See In re Disciplinary Proceedings Against Kalal*, 2002 WI 45, ¶ 48, 252 Wis. 2d 261, 643 N.W.2d 466 (Abrahamson, C.J., concurring) ("SCR 20:3.3 appears to allow zero tolerance for false statements of fact or law regardless of their materiality.").

¶ 64. Because Attorney Alia had altered the report, marked as exhibit 21, Attorney Alia knew it contained alterations from the original report. It is undisputed that Attorney Alia had not, however, disclosed the alterations to the appraiser, counsel, the court, or the jury as of the time he used the report in the direct examination of his expert witness. By representing the altered report as an unaltered version of the appraiser's original report at trial, Attorney Alia knowingly offered false evidence in the form of false testimony.

¶ 65. Next, Attorney Alia attacks the referee's finding that the OLR met its burden as to Count II in three ways: (1) he claims the referee's finding that he made additional alterations to exhibit 21 after his

Alia's continued claim that he had made all the substantial whited-out redactions later discovered in exhibit 21 before the trial.

expert witness testified was clearly erroneous; (2) he contends, alternatively, that in light of the finding that he made the majority of the redactions after Attorney Olson had photocopied exhibit 21, Attorney Olson was not denied access to anything of potential evidentiary value; and (3) he argues that there is no evidence that he had subjective intent to deceive.

¶ 66. Attorney Alia devotes considerable effort to arguing that the referee's finding that he made additional changes to exhibit 21 after the first day of trial is clearly erroneous. He does not challenge, however, the referee's determination that only two explanations emerged for the discrepancies between exhibits 21 and 24—either Attorney Alia made changes to the exhibit after Attorney Olson copied exhibit 21, or Attorney Olson fabricated exhibit 24 from stolen and unidentified documents. We have previously concluded that the record supports the referee's acceptance of the first explanation and rejection of the latter and we do not repeat that discussion here.

¶ 67. Attorney Alia claims, nonetheless, that the physical evidence cannot be reconciled with the testimony of the OLR's witnesses. He points to a small v-shaped mark in the margin on one of the pages on exhibit 24, which does not appear on exhibit 21. He also points out that the appraiser's full name, apparent on exhibit 21, is partially missing on exhibit 24. He claims that when contrary to physical evidence, testimony must give way, citing *State v. Trudeau,* 139 Wis. 2d 91, 408 N.W.2d 337 (1987).

¶ 68. The *Trudeau* case holds:

> When the physical facts are unquestionably established, testimony to the contrary must give way. . . . "Positive uncontradicted testimony as to the existence

> of some fact, or the happening of some event, cannot be disregarded by a court or jury in the absence of something in the case which discredits the same or renders it against the reasonable probabilities."

*Id.* at 108 (citations omitted).

¶ 69. Here, the record does not unquestionably establish physical facts or positive uncontradicted testimony as to the events in question. Instead, the referee was presented with conflicting evidence and was required to assess its weight and credibility. We conclude that the referee's decision to place less weight on the marks and obscurities on exhibit 24 was properly within her role as fact finder. Because her inferences are reasonable, they are not overturned on appeal. *See Kalal,* 252 Wis. 2d 261, ¶ 54 (Abrahamson, C.J., concurring) ("[A] different view of the facts is not important because this referee's finding is determinative.").[8]

¶ 70. Attorney Alia further contends that the referee erroneously assessed little credibility to his witnesses who testified at the disciplinary hearing. Attorney Alia presented his wife, his colleagues at his law firm and other witnesses to support his contention that he was seen making whited-out changes to a report on January 27 before trial and, after the first day of trial, he had no opportunity to apply a white-out to exhibit 21. The referee considered this testimony, but accorded it little weight noting that his wife's loyalty and the delay between the events and the disciplinary hearing may have affected the reliability of the testimony. The referee noted these witnesses were available to testify at the hearings before Judge Schroeder, but had not.

---

[8] In any event, the physical evidence to which Attorney Alia refers is not irreconcilable with the ultimate determination that exhibit 21 was significantly altered after Attorney Olson copied the document.

Attorney Alia counters the referee's credibility assessment by stating that the witnesses' testimony was presented in the form of affidavits at a motion to reconsider before Judge Schroeder and it is inappropriate to consider that they had not presented their testimony previously.

■

¶ 71. "It is well settled that where there is conflicting testimony, the referee, as finder of fact, is the ultimate arbiter of the credibility of the witnesses." *In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, ¶ 53, 279 Wis. 2d 583, 694 N.W.2d 910. The referee was entitled to accept Attorney Olson's testimony he made just one copy of the exhibit marked exhibit 21 at trial. Thus, the referee's determination to place less weight on Attorney Alia's witnesses' testimony does not require this court to overturn her findings.[9]

■

¶ 72. We further reject Attorney Alia's argument that Attorney Olson was not denied access to anything of potential evidentiary value. We appreciate that it could be argued the appraiser's report lacked potential evidentiary value, because it calculated damages from 1999 comparables and, therefore, did not conform to the appraiser's opinion of 1997 values.[10] It could also be argued because Attorney Olson had made a copy of

---

[9] Attorney Alia also contends that Attorney Olson admitted his client lied when R.C. said he saw Attorney Alia take the original of exhibit 21 home with him on the evening of the first day of trial. We note that the referee did not make an explicit finding as to R.C.'s credibility. In any event, we conclude that the discussion to which Attorney Alia refers is subject to a number of varying interpretations.

[10] At the disciplinary hearing, Attorney Alia agreed that nothing in the report dealt with the value as of 1997.

exhibit 21 before it had been further redacted to obscure square footage and 1999 values, he had access to the evidence, which was later eliminated. Neither argument, however, is persuasive.

¶ 73. During Attorney Olson's cross-examination of T.T., Attorney Alia objected to exhibit 24 for lack of foundation. When Attorney Alia located exhibit 21, Attorney Olson observed it was different than what he copied the day before. In chambers, when Attorney Olson requested an explanation, Attorney Alia responded, "It was redacted when I met with [the appraiser] on Tuesday afternoon or Wednesday afternoon. We had talked about it. We went over the numbers and there — there was a redacted copy."

¶ 74. By producing what amounted to be three different versions of the report during the jury trial, Attorney Alia unlawfully obstructed Attorney Olson's access to an accurate version of the report, thus preventing him from engaging in meaningful cross-examination of T.T. In so doing, Attorney Alia denied Attorney Olson access to a version of the report with potential evidentiary value. From a current perspective, five years after the fact, after numerous hearings have been held to sort out the events, Attorney Olson presumably would know which exhibit represented an accurate version of the appraisal. However, at the time of T.T.'s cross-examination, there were two different versions of the appraiser's report and a third emerged during discussions with Judge Schroeder. Attorney Alia later said there were other copies unaccounted for. We reject Attorney Alia's claim that the confusion generated by his conduct did not deny Attorney Olson evidence with potential evidentiary value.

¶ 75. Attorney Alia also contends he merely made a good faith representation of fact that later turned out

to be inaccurate. The referee was entitled to conclude otherwise. *See In re Disciplinary Proceedings Against Jacobson*, 2004 WI 152, ¶ 50, 277 Wis. 2d 120, 690 N.W.2d 264 ([I]t was the referee's role to judge . . . credibility with respect to intent, and the inference to be drawn from the evidence.) The record permits a finding that Attorney Alia intentionally altered an exhibit to make it appear his expert witness's testimony conformed to his appraisal.[11] Therefore, we reject Attorney Alia's contention there is no proof he had any subjective intent to deceive.

¶ 76. Next, Attorney Alia argues the OLR failed to meet its burden of proof with respect to Count IV, involving false statements to a tribunal. He argues it is not true he ever claimed all the changes in the report were made with the appraiser's knowledge or approval. Attorney Alia points out that during Judge Schroeder's telephone call to the appraiser from chambers, he admitted the appraiser did not consent to the redactions.

¶ 77. Attorney Alia's argument offers no defense. The record discloses that Attorney Alia stated in chambers "[i]t was redacted when I met with [the appraiser]" and "[w]e had talked about it." These statements may be reasonably interpreted to mislead the judge into believing he redacted the report with the appraiser's knowledge and consent. Attorney Alia's subsequent contrary statement to Judge Schroeder, made during the telephone call to the appraiser, does not eliminate Attorney Alia's initially false statement. Attorney Alia's contradictory statements are sufficient to demonstrate

---

[11] Attorney Alia also complains the referee never made a specific finding of his intent to deceive. We are satisfied that the finding is implicit within the context of the referee's 75 findings of fact regarding the grounds for misconduct.

a violation of SCR 20:3.3(a)(1). The record supports the referee's determination that the OLR met its burden of proof on Count IV.

¶ 78. Next, Attorney Alia contends the OLR failed to meet its burden of proof with respect to Count V, which included the charge that Attorney Alia falsely accused Attorney Olson or his client of stealing unidentified documents from him and fabricating exhibit 24. Attorney Alia reiterates his previous contentions, and points out he made a variety of conflicting statements regarding the potential source of exhibit 24.[12] Attorney Alia argues that he has told the truth from the outset and, because he made all the redactions before the trial, "[t]here is, therefore, only one implication to be drawn as to how Olson came to be in possession of a partially redacted report."

¶ 79. We do not accept the premise that Attorney Alia's inconsistent statements provide a basis to overturn the referee's findings. Also, because Attorney Alia's argument relies on his assessment of his own credibility, it invites us to disregard our standard of review. Where there is conflicting testimony, the referee is the ultimate arbiter of the credibility of the witnesses. *See Arthur,* 279 Wis. 2d 583, ¶ 53. Here, Attorney Alia did not persuade the referee that Attorney Olson fabricated an exhibit from stolen documents. The referee found "Olson has been consistent, and clear, from the morning of February 1, 2000, that he only had and copied one document." The referee noted there was no evidence

---

[12] For example, he also said, "I'm not suggesting anyone took one copy . . . but clearly there is [sic] two reports and the one that [the appraiser] acknowledged as his exhibit was the redacted copy." Attorney Alia notes he also said, "it could be as simple as a copying error by Mr. Olson."

that Attorney Olson even knew more than one report existed.

¶ 80. In contrast, the referee determined that Attorney Alia was "vague, imprecise and confusing about the number of copies of the [appraiser's] report he received or the number of copies he made." She notes, for example, Attorney Alia's statement during the May 31, 2000, circuit court hearing, in which he says: "There were copies made. Copies were sent. I have copies in my file. I can't give you the exact number of copies that were made. But I believe there are copies that are unaccounted for." We do not disturb the referee's credibility determinations.[13] The record supports the referee's determination that the OLR met its burden of proof with respect to Count V.

¶ 81. Next, Attorney Alia attacks the referee's findings with respect to motive. He challenges her finding that the information he removed from exhibit 21 was damaging to the appraiser's credibility and deprived opposing counsel of useful evidence. He also attacks Attorney Olson's statement that if he had noticed the elimination of the listing price in the exhibit, he would have made an issue out of it on cross-examination. Attorney Alia argues that Attorney Olson's testimony is false because the court had determined the listing price was irrelevant. Thus, he submits

---

[13] Attorney Alia contends that his own statements have been consistent from the start, and argues at length the inaccuracies and inconsistencies of other witnesses, including Judge Schroeder and Attorney Olson. He also points to inaccuracies in the referee's report. Without belaboring this opinion with a recitation of the comparative inconsistencies, our examination of the record satisfies us that the referee reasonably determined that Attorney Alia made vague, imprecise and confusing explanations.

the referee accepted patently false information, so her credibility findings should be overturned. He further contends because he merely eliminated certain information regarding the 1999 values, and did not add 1997 dates, he did not have motive to conceal information damaging to his case. He points out that exhibit 21 still stated an effective date of December 14, 1999, even after he had made the many redactions. Therefore, he contends that the referee's findings as to motive are "irreconcilably at odds with both the report and the 2000 transcripts."

¶ 82. Attorney Alia's arguments[14] fail to acknowledge that what was damaging to his case was not merely the substance of the information reported, which was partially eliminated with a white-out, but also that the report itself did not conform to his witness's testimony. As the referee's findings indicate, the lack of a relevant appraisal report had the potential of detracting from the appraiser's credibility. Thus, the record supports the referee's determination that the whited-out redactions were consistent with a motive to conceal information damaging to his case, i.e. the information that the report was non-conforming to the relevant testimony.

¶ 83. Next, we address Attorney Alia's assertion that the referee erroneously considered the proceedings and decision at the T.T. trial. Attorney Alia complains the OLR presented Judge Schroeder as a witness at the disciplinary hearing to elevate him to the status of a "super juror" and permit him to read from his decision. He argues this practice must be condemned. *See State v.*

_____

[14] Because Attorney Alia does not suggest that it was necessary for the OLR to prove motive, his contentions are considered in the context of his challenge to the referee's credibility findings.

*Dalton*, 98 Wis. 2d 725, 298 N.W.2d 398 (1980). He claims, therefore, the circuit court's decision in T.T. and the trial transcripts, except where used as impeachment as for the attorney's inconsistent statements, should have been excluded.

¶ 84. The record reveals the referee articulated a rational basis to permit Judge Schroeder to testify as a fact witness and to admit the trial transcripts at the disciplinary hearing. At the disciplinary hearing, the OLR stated it did not intend to ask Judge Schroeder for his opinion whether Attorney Alia violated any supreme court rules or for any conclusions of law. The referee determined: "[M]y job is not to accept Judge Schroeder's opinion, but to make my own decision based on the evidence and . . . the statements made by both lawyers are probably relevant and material both as to their credibility and the statements they are making now as to the facts that they represented at that time."

¶ 85. The referee further explained Judge Schroeder, as a fact witness, "has factual observations that he made during the course of these events, and his testimony with respect to those things is appropriate." She ruled Judge Schroeder would be entitled to "tell us what he has observed, what he has heard." The referee further stated that whether Judge Schroeder would be entitled to express an opinion to the same extent that a lay witness would be entitled to express an opinion would be decided "when we get there."

¶ 86. To the extent Attorney Alia complains that the findings of fact refer to the transcripts of the T.T. trial, we conclude these transcript references provide background necessary for an understanding of the charges. Also, we note that at the disciplinary hearing, Attorney Alia's counsel stated, "I have no objection to the portions of Mr. Alia's statements that are argued to

be admissions of some kind being received." During Judge Schroeder's testimony, Attorney Alia's counsel argued the trial transcripts were the "best evidence rather than the witness's recollection" and at that point the transcripts were referred to without objection. Attorney Alia identifies no improper use of Judge Schroeder's testimony, decision, or the trial transcripts.

¶ 87. After a careful review of the arguments of counsel, examination of the record and the exhibits in question, and consideration of the relevant case law, we are unpersuaded that the referee's findings are clearly erroneous, that the OLR failed to meet its burden of proof with respect to each count, or that the referee made erroneous evidentiary rulings. To the extent we have not specifically addressed each argument Attorney Alia has presented, each argument has been considered and rejected, while not always meriting individual discussion. *See Arthur,* 279 Wis. 2d 583, ¶ 77.

## IV

¶ 88. Finally, we turn to the parties' arguments regarding the appropriate sanction to be imposed. Although this court takes into account the referee's recommendation, we do not accord it great weight because ultimately, it is this court's responsibility to determine appropriate discipline. *See In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, ¶ 74, 279 Wis. 2d 550, 694 N.W.2d 894. We first consider the seriousness of the conduct; we also consider the need to protect the public, courts, and legal system from repetition of misconduct, to impress upon the attorney the seriousness of the misconduct and to deter other attorneys from engaging in similar misconduct. *Arthur,* 279 Wis. 2d 583, ¶ 78.

¶ 89. The five counts of misconduct committed by Attorney Alia are serious infractions of the Supreme Court Rules of Professional Responsibility. Section 20:3.3 imposes upon attorneys a solemn duty of candor toward the tribunal. *See Kalal,* 252 Wis. 2d 261, ¶ 1. "We emphasize at the outset that an attorney's duty of candor toward the tribunal is central to the truth-seeking function of any court." *Id.* The significance of our courts' truth-seeking function is well imbedded in Wisconsin law. *See Hepp v. Petrie,* 185 Wis. 350, 200 N.W. 857 (1924) ("Confidence in the courts is a necessary and indispensable factor in our national life."). This court has the obligation to impose a strong unmistakable sanction to reinforce an attorney's obligation of truthfulness and to deter deceit and gamesmanship in our courts. *See Kalal,* 252 Wis. 2d 261, ¶ 1.

¶ 90. We disagree with Attorney Alia that a public reprimand is a sufficient sanction. In contrast to the *Kalal* case, Attorney Alia was not only found to have made untruthful statements to the circuit court judge and baseless accusations against opposing counsel, but also doctored an exhibit, and used it to elicit false testimony at a jury trial, resulting in a mistrial.

¶ 91. While the five counts are serious violations, Attorney Alia has not been previously disciplined and the underlying proceedings have already been costly to him. Thus, we disagree with the OLR that at a minimum a six-month suspension is necessary. Under the totality of the circumstances, we conclude that a 90–day suspension of Attorney Alia's license to practice law in this state is an appropriate sanction.

¶ 92. We accept the referee's recommendation of suspension and that Attorney Alia should pay the costs of the disciplinary proceeding.

337

¶ 93. IT IS ORDERED that the license of Attorney Gino Alia to practice law in Wisconsin is suspended for 90 days, effective March 14, 2006.

¶ 94. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Gino Alia pay to the Office of Lawyer Regulation the costs of these proceedings, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Gino Alia to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 95. IT IS FURTHER ORDERED that Attorney Gino Alia comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.